Priestman v. United States.

or that the parties are citizens of different states; the court will assert its jurisdiction. Then, the purchase and possession of real estate announce the character of citizen; since aliens cannot purchase and hold real estate in Georgia; and the long residence of Daniel Course, the purchaser, and his family, in the state, is a circumstance strongly corroborative. If the widow is sufficiently described, to show that she was a citizen of Georgia; there can be no doubt, that the complainants are sufficiently described as aliens.

---

*AUGUST TERM, 1800.                              [*28

Present—PATERSON, CHASE, WASHINGTON and MOORE, Justices.

---

PRIESTMAN, Plaintiff in error, *v.* UNITED STATES.

*Forfeiture under the revenue laws.*

Foreign goods, exceeding $800 in value, transported across a state, without a permit, in violation of the act of 18th February 1793, are liable to forfeiture, though not the property of the master, owner or any mariner of the vessel in which they were imported, and although the duties were paid on them, at the port of entry.

IN Error from the Circuit Court for the Pennsylvania district. An information was filed in the district court in the following terms :

"Be it remembered, that on the 16th day of January 1798, into the district court of the United States for the Pennsylvania district, in his proper person, comes William Rawle, attorney for the said United States for the district aforesaid, who for the said United States in this behalf prosecutes, and for the said United States gives the court here to understand and be informed, that between the first day of November last past, and the exhibition of this bill, two hundred and three silver watches, three gold watches, two enamelled watches, two metal watches, two hunting watches, and seven pinchbeck watches, being articles of foreign manufacture, and liable to the payment of duties imposed by the laws of the United States, and being together of the value of $800 and more, were transported from the state of Maryland, across the state of Delaware, to the district of Pennsylvania, without a permit from the collector of any district in the said state of Maryland, for that purpose first had and obtained. And the attorney aforesaid, prosecuting as aforesaid, further gives the court to understand and be informed, that the said goods, wares and merchandises, so as aforesaid transported to *the district of Pennsylvania, were not, within twenty-four   [*29 hours after the arrival thereof in the said district of Pennsylvania, reported to the collector of the said district of Pennsylvania, by the owner or consignee thereof, or by any other person whatever. Whereby, and by force of the acts of the congress of the said United States, the said two hundred and three silver watches, three gold watches, two enamelled watches, two

Priestman v. United States.

metal watches, two hunting watches, and seven pinchbeck watches have become forfeited to the said United States; and for the causes aforesaid have been seized by Sharp Delany, Esquire, collector of the said district of Pennsylvania, and are now in the custody of the marshal, &c. Wherefore, the said attorney, prosecuting as aforesaid, prays the advice of the court upon the premises, and due process, &c."

This information was founded on the act of congress, entitled "An act for enrolling and licensing ships or vessels, to be employed in the coasting trade and fisheries, and for regulating the same" (1 U. S. Stat. 313), and particularly, upon the 19th section of the act, which is in these words :

" § 19. That it shall and may be lawful for the collector of the district of Pennsylvania to grant permits for the transportation of goods, wares or merchandise of foreign growth or manufacture, across the state of New Jersey, to the district of New York, or across the state of Delaware, to any district in the state of Maryland or Virginia; and for the collector of the district of New York to grant like permits for the transportation across the state of New Jersey ; and for the collector of any district of Maryland or Virginia to grant like permits for the transportation across the state of Delaware to the district of Pennsylvania: provided, that every such permit shall express the name of the owner or person sending such goods, and of the person or persons to whom such goods shall be consigned, with the marks, numbers and description of the packages, whether bale, box, chest or otherwise, and the kind of goods contained therein, and the date, when granted ; and the owner or person sending such goods shall swear or affirm that they were legally imported and the duties thereupon paid or secured : And provided also, that the owner or consignee of all such goods, wares and merchandise shall, within twenty-four hours after the arrival thereof at the place to which they were permitted to be transported, report the same to the collector of the district where they shall so arrive, and shall deliver up the permit accompanying the same, and if the owner or consignee aforesaid shall neglect or refuse to make due entry of such goods, within the time, and in the manner herein directed, all such goods, wares and merchandise shall be subject to forfeiture ; and if the permit granted shall not be given up, within the time limited for making the said report, the person or persons to whom it was granted, neglecting or refusing to deliver it up, shall forfeit fifty dollars for every twenty-four hours it shall be withheld afterwards : provided, that where the goods, wares and merchandise, to be transported in manner aforesaid, shall be of less value than $800, the said oath and permit shall not be deemed necessary, nor shall the owner or consignee be obliged to make report to the collector of the district where the said goods, wares and merchandise shall arrive."

William Priestman, the plaintiff in error, filed a claim for the watches, setting forth " that he had paid the duties upon them, and that he did not transport them from the district of Maryland, across the state of Delaware, into the district of Pennsylvania." The attorney of the district having filed a general replication to the claim, a case was made for the opinion of the court, in which the material facts were stated as follows :

" That the watches in question were of the value of $3899. That they were imported into the district of Maryland, and the duties thereon paid or secured, according to law. That they were afterwards carried by the claim

Priestman v. United States.

ant, or, his agent, from the district of Maryland across the state of Delaware, to the state of Pennsylvania, to wit, to the city of Philadelphia, without any license or permit so to do, first had and obtained from the collector of the port of Baltimore ; and that no notice was given to the collector of the port of Philadelphia. That the watches were publicly offered for sale, next door to the custom-house, in the city of Philadelphia, with a number of other articles ; and were afterwards seized as forfeited. That the watches did not belong to the master, owner or any mariner of the ship or vessel in which they were imported from beyond sea into Baltimore ; nor was the claimant, captain, owner or mariner of the packet-boat in which they were brought from Baltimore to Frenchtown, or from Newcastle to Phila-delphia."

The case was argued before the district judge, in December 1798, and a decree of condemnation pronounced ; which was affirmed upon a writ of error to the circuit court, in April term 1880 ;(a) and, thereupon, the cause was removed into this court; *and argued upon the same facts, by the [*31 district-attorney (*Rawle*, in the absence of *Lee*, attorney-general), for the United States, assisted by *W. Sergeant*, for the informer ; and by *Ingersoll* and *S. Levy*, for the plaintiff in error.

For the *plaintiff* in error.—This is a penal act, and must, on general principles, be construed strictly. 1 Black. Com. 88, 92 ; Plowd. 109 ; 3 Co. 7 ; Plowd. 13 *b ;* 19 Vin. Abr. 523–4 ; 8 Mod. 7, 65 ; 10 Co. 73 ; Cowp. 355, 660. In the particular case before the court, the facts call for the most liberal exposition in favor of the claimant ; since, there is not the slightest ground to impute a fraudulent intention to him ; nor could there be the smallest loss of revenue to the public. Taking, then, the 33d section of the

---

(a) The circuit court was composed of CHASE, Justice, and PETERS, District Judge. The presiding judge, in delivering the opinion of the court, made the following observations :

CHASE, Justice.—By the rules which are laid down in England for the construction of statutes, and the latitude which has been indulged in their application, the British judges have assumed a legislative power ; and on the pretence of judicial exposition, have, in fact, made a great portion of the statute law of the kingdom. Of those rules of construction, none can be more dangerous, than that, which, distinguishing between the intent and the words of the legislature, declares, that a case not within the mean-ing of a statute, according to the opinion of the judges, shall not be embraced in the operation of the statute, although it is clearly within the words ; or, *vice versâ*, that a case within the meaning, though not within the words, shall be embraced. For my part, however, sitting in an American court, I shall always deem it a duty to conform to the expressions of the legislature, to the letter of the statute, when free from am-biguity and doubt ; without indulging a speculation, either upon the impolicy or the hardship of the law. In the present instance, the clause of forfeiture is clear, direct, and positive. If the provision of the 33d section were equally clear, and necessarily connected with the subject of the 19th section, it would, undoubtedly, control the clause of forfeiture. But say, even, that the 33d section is obscure in its terms, and doubtful in its relation (which I do not admit), this would not induce me to supersede, control and annul, what is neither obscure nor doubtful, in the provisions of the 19th section. Upon the whole, the effect, in the present case, will, probably, be severe upon the claimant, if he has only been guilty of an act of negligence : but the law does not distinguish, as to the present object, between a careless, and a fraudulent, omission of the duty prescribed, and the court cannot do it.

same act of congress into view, to form a just conclusion from the whole, the watches in question are exempted from any forfeiture, because they did not belong to the master, owner or mariners of the vessel in which they were imported, and because the duties upon them had been previously paid or secured.(a)   It must, indeed, be admitted, that there is an apparent contradiction between the 19th section, which imposes the forfeiture, if the owner or consignee of the goods neglects to perform the duties prescribed; and the 33d section, which exempts the goods from forfeiture, if they belong to any person, other than the owner, master or mariners of the vessel: but the different parts of statutes should be so construed, that each, if possible, may have an operation, consistent and harmonious with the rest.   Admitting, therefore, that the claimant is within the *description of the 19th section, to incur a forfeiture, the apparent contradiction of the law will be obviated, by admitting also that the previous payment of the duties on the goods, exempts him from the forfeiture, under the 33d section.   Besides, the information does not state, that the master of the vessel had no manifest; and to constitute the offence, the act of irregular transportation must be connected with the want of a manifest, conformable to the 18th section.   The 19th section (and, indeed, the whole of the law, which is made emphatically to regulate the coasting trade), from the plain import of its language, applies to cases of water carriage, and cases of water carriage are equally the subject of the 33d section.   Nor is there anything in the case stated, to show that the watches were not transported coast-wise ; or brought in the owner's private carriage ; and even the 19th section does not contain an injunction upon the owner to take out a permit for his goods, on which he has paid the duties, to whatever place he may choose to remove them.

For the *United States.*—Though penal laws are to be strictly construed, they are to be fairly and truly construed, according to the plain and natural signification of the words employed. 2 Ld. Raym. 1421; 1 Dall. 197 ; 10 Co. 73. If, however, the claimant's construction should prevail, the sweeping operation of the 33d section of the act would annihilate its most positive and most salutary sanctions: but a proviso, so repugnant to the enacting clauses, would itself be void.   1 Bl. Com.; 1 Co. Rep. 47. (a)  The case stated brings the facts precisely within the information; and the information is precisely within the 19th section.   The forfeiture is, therefore, complete, and must be enforced by the court, unless it is remitted by the operation of the 33d section.   It becomes important, then, to inquire: 1st. What is the true meaning of this ambiguous, and, certainly, ungrammatical clause ? and 2d. To what does the true meaning relate ?

1st. The first difficulty that occurs, in settling the meaning of the 33d section, arises from the indefinite call for a noun, to correspond with the verb, where several nouns are introduced, and all cannot be applied.   Is it the *ship*, the *master*, or the *cargo*, which, in the specified case, shall be exempted from any forfeiture?   The marginal note declares the exemp-

---

(a) § 33. " That in all cases where the whole, or any part of the lading or cargo on board any ship or vessel, shall belong *bona fide* to any person or persons, other than the master, owner or mariners of such ship or vessel, and upon which the duties shall have been previously paid or secured, according to law, shall be exempted from any forfeiture under this act, anything herein contained to the contrary notwithstanding."

tion in favor of the ship ; but the argument of the claimant asks it for the cargo. The 33d section, however, is, in form and substance, a *proviso;* and as such, naturally refers to the next preceding section, where are to be found the offences from which the forfeiture springs, and the subject on which the forfeiture attaches ; § 32, to wit : 1st. The transfer of a licensed ship to an alien. 2d. The employment of a licensed vessel in a trade not licensed. 3d. The possession of a forged or altered license. 4th. The possession of a license granted for another ship. In these four cases, the ship and the *cargo on board, are declared to be the subject of forfeiture. [*33 But the exemption from forfeiture, contained in the 33d section, is not, in the generality of the expression, confined to the four cases ; but extends to " any forfeiture under this act, anything therein contained to the contrary notwithstanding." Must not the nature of the offence be considered, then, to qualify the generality of the expression ? In the 5th section, it is enacted, that if a vessel is found with a forged or altered license ; or makes use of a license granted for another vessel, the offending vessel, and the cargo on board, shall be forfeited. In the 6th section, it is enacted, that if a vessel is found in the coasting trade, or carrying on the fisheries, without being enrolled and licensed, and having a foreign cargo, or distilled spirits, on board, she and her lading shall be forfeited. In the 8th section, it is enacted, that if an enrolled or licensed vessel sails on a foreign voyage, without first surrendering her license, and taking out a register, she and her cargo shall be forfeited. And in the 21st section, it is enacted, that if a vessel, licensed for the fisheries, is found within three leagues of the coast, with foreign merchandise on board, exceeding in value $500, she and her cargo shall be forfeited, unless she had previously obtained permission to touch at a foreign port. Now, in all these sections, the forfeiture of the cargo is cumulative, derivative and accessary to the forfeiture of the vessel ; and the punishment is inflicted for offences committed by the master or owner of the vessel. Hence, the policy and justice of the provision of the 33d section, in contemplation of such cases, to prevent one man's suffering for another man's wrong, by exempting from forfeiture, the cargo on board the delinquent vessel, to whose owners, master or mariners, the cargo did not belong. With reference, therefore, to the nature of the offences enumerated in the next preceding section, the exemption from " any forfeiture under this act," must be confined to forfeitures of the same kind ; that is, to forfeitures of vessels and their cargoes, for the acts or omissions of the owners or masters of the vessels. But still, there are specific and appropriate forfeitures, arising from the misconduct of the owners of goods. Thus, if the owner of goods transport them, by water, from district to district, they must be accompanied with a manifest, or they will be liable to forfeiture, under the 18th section. And if he transport them by land, he must obtain a permit, under the same penalty, in compliance with the 19th section. The same principle which suggested the necessity of a manifest in the one case, required the permit in the other ; and if the goods are not included in the manifest, or, of course, if not included in the permit, they are forfeited. It is idle to argue from the supposed inutility of requiring the permit. It is an incident in a general system, that must be maintained in all its parts ; for at the sligh·　st aperture, the most inconvenient mischiefs may enter,

The Amelia.

*2. In answering the second general inquiry (to what does the true meaning of the 33d section refer ?) it is proper more particularly to observe, that the 19th section clearly provides for the case of a transportation by land carriage : because it speaks of a transportation " across a state," which (as no canal is established) must be by land. If by land, it cannot involve the agency of a ship or vessel, and as the proviso of the 33d section refers to the forfeiture of a ship or vessel, and not of a wagon or stage, as it does not describe goods, generally, but a lading or cargo, on board, it is utterly inapplicable to a case of internal land carriage ; and must be considered as referring only to cases of water transportation ; or, in other words, to the coasting trade.

On the 15th of August, the judges briefly delivered their opinions, *seriatim*, concurring in the following result :

BY THE COURT.—The case stated comes clearly within the 19th section of the act of congress, for enrolling and licensing vessels to be employed in the coasting trade and fisheries. The provisions of the section are salutary, and were made to guard against frauds upon the revenue, in the transportation of goods of foreign growth or manufacture, across the several states. Public policy, national purposes, and the regular operations of government require, that the revenue system should be faithfully observed and strictly executed. It is obvious, that the claimant is an offender, within the purview of the 19th section. To purge the offence, he relies upon the 33d section of the same act. But it is too plain for argument, that this section cannot, by any fair and rational construction, be made to refer to the 19th section. It is inapplicable, because the objects are entirely different.

Judgment affirmed.